# Exhibit A

To Suggestions in Support of Application
for an Order to Show Cause and Order
Requiring Compliance with
Administrative Subpoena

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In the Matter of an Application to Enforce the Administrative Subpoena of the<br><br>U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Petitioner,<br><br>v.<br><br>CHARLES MCALLISTER,<br><br>Respondent. | :<br>:<br>:<br>:<br>:<br>:<br>: Misc. Case No. 16-9010<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DECLARATION OF J. ALISON AUXTER IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE AND ORDER REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA PURSUANT TO 28 U.S.C. § 1746**

I, J. ALISON AUXTER, do hereby declare as follows:

1.      I am over 21 years of age and have personal knowledge of the facts and circumstances described herein.  I am an attorney with the Division of Enforcement (Division) of the U.S. Commodity Futures Trading Commission (Commission), 4900 Main Street, Suite 500, Kansas City, Missouri 64112.

2.      On May 5, 2015, the Commission issued a formal order of investigation entitled "Certain Persons Engaged In Unlawful Retail Commodity Transactions" (as amended July 24, 2015 to designate additional members of the Division) pursuant to Sections 6(c) and 8(a)(1) of the Commodity Exchange Act (Act), 7 U.S.C. §§ 9 and 12(a)(1) (2012), designating Division staff members to administer oaths and affirmations, subpoena witnesses and compel their attendance, take evidence, and require the production of any books, papers, correspondence,

memoranda, records and other tangible things relevant or material to an investigation being conducted pursuant to Sections 6(c) and 8(a)(1) of the Act. On July 31, 2015, the Order was amended to include the company BullionDirect Inc. (BDI) and Charles McAllister (McAllister), an individual (Investigation).

3.    The Order, issued pursuant to Section 11.2(b) of the CFTC Regulations, 17 C.F.R. §11.2(b) (2015) (Regulations), authorized Jo Mettenburg and me, among others, to issue subpoenas and take testimony for the purpose of determining whether BDI, McAllister or other entities or persons, have engaged in or are engaging in acts or practices in violation of the Act or Regulations.

4.    The Commission's Investigation regarding BDI is being conducted from the Commission's office in Kansas City, Missouri. The attorneys working on the Investigation are assigned to the Kansas City, Missouri office, the subpoena that is the subject of this action was issued from, and is returnable to, the Commission's Kansas City, Missouri office, and the subpoena required McAllister to appear, produce documents and testify at the Commission's Kansas City, Missouri office.

5.    BDI is a company formerly located at 700 Lavaca St # 1400 Austin, TX 78701. Attached as Exhibit 1 is the Company Report concerning BDI from Thompson Reuters CLEAR prepared on July 21, 2015.

6.    According to information obtained in the Investigation thus far, the Commission has learned that Charles McAllister was the president of BDI until July 20, 2015. (*See* Exhibit 1.)

7.    During the course of the Investigation into BDI and McAllister, the Division uncovered evidence that BDI and McAllister may be in violation of Section 6(c) of the Act, 7

2

U.S.C. § 9(c)(1), and/or Regulation 180.1, 17 C.F.R. § 180.1, by engaging in unlawful retail commodity transactions. In an effort to discover information related to these potential violations, the Division is seeking information concerning the operations of BDI and related entities Nucleo Development Company, LLC, Nucleo Exchange and any other related entities (collectively, Nucleo). BDI maintained the website Nucleo Exchange and claims it is proprietary software that facilitates precious metals exchanges between buyers and sellers. While the buyers and sellers connect with each other over the Nucleo Exchange, BDI acts as an intermediary that handles the trading, validation, insurance, order fulfillment and distribution of the metals between the marketplace buyers and sellers.

8.      McAllister, as the former president of BDI, is likely to have documents and communications in his possession related to BDI and/or Nucleo. These documents are relevant and will assist greatly the Commission in determining whether any violations of the Act and/or Regulations have occurred.

9.      As part of its ongoing Investigation, on December 17, 2015 and January 21, 2016, the Commission issued subpoenas duces tecum to McAllister to appear and testify at the Commission's offices in Kansas City, Missouri. Attached as Exhibit 2 is a true and correct copy of the December 17, 2015 and January 21, 2016 subpoenas.

10.      The Division served the December 17, 2015 subpoena, consistent with the requirements of the Act, on McAllister at an address in Austin, Texas 78749, the most recent address appearing on a Thompson Reuters CLEAR report. (Exhibit 2; *see also* Exhibit 3, a true

3

and correct copy of the Individual Report concerning Charles McAllister from Thompson

Reuters CLEAR prepared on July 21, 2015.)[1]

11.     The December 17, 2015 subpoena required McAllister to appear and testify on

January 7, 2016.  In lieu of this appearance on January 7, McAllister was given the option to

produce the requested documents to the Division by January 4, 2016.

12.     The Division did not receive a response to this December 17, 2015 subpoena, nor

did McAllister appear.

13.     On January 12, 2016, the Division contacted Randy Leavitt, whom the Division

understood to represent McAllister.

14.     After a phone call with Mr. Leavitt on January 20, 2016 in which he agreed to

accept service of the subpoena, on January 21, 2016 the Division issued a second subpoena

duces tecum (Subpoena), which required McAllister to appear and testify on February 11, 2016.

In lieu of this appearance on February 11, 2016, McAllister was given the option to produce the

requested documents to the Division by February 4, 2016.

15.     The Division served the Subpoena, consistent with the requirements of the Act, on

Randy Leavitt of The Law Office of Randy T. Leavitt, 1301 Rio Grande Street, Austin, TX

78701, via email to randy@randyleavitt.com, counsel for McAllister. (Exhibit 2.)

16.     On February 4, 2016 I had a telephone conversation with Mr. Leavitt about the

Subpoena directed to McAllister and served by the Division on January 21, 2016.  Without

admitting the existence of any responsive documents, Mr. Leavitt objected to the Subpoena as

overly broad and unduly burdensome and advised that because he interpreted the Subpoena as

"individual" in nature, McAllister would be asserting a Fifth Amendment claim as to the act of

---

[1] Exhibits 2 and 3 have been redacted to comply with Federal Rule of Civil Procedure 5.2 and Commission policies
and procedures relating to privacy.  Further, only relevant portions of the CLEAR reports are included in Exhibits 2
and 3, although full CLEAR reports can be provided at the Court's request.

producing the requested documents and sent an email confirming McAllister's assertion of his Fifth Amendment claim against self-incrimination. (Attached as Exhibit 4 is a true and correct copy of the February 4, 2016 email from Leavitt to Auxter.)

17. Based on the February 4, 2016 Fifth Amendment privilege assertion, Mr. Leavitt advised me that McAllister would not produce responsive documents or appear on February 11, 2016, and McAllister in fact did not produce documents or appear on February 11.

18. Jo Mettenburg (also an attorney in the Division) and I arranged for a call with Mr. Leavitt on February 19, 2016, in order to discuss McAllister's February 4 assertion of the Fifth Amendment privilege. On that call we stated our belief that the response to the January 21 subpoena was insufficient, and discussed a potential resolution.

19. Mr. Leavitt stated that he did not want to duplicate efforts, and that if the Division sought or would seek documents from BDI, that McAllister's documents would likely be duplicative of the BDI documents.

20. Ms. Mettenburg and I pointed out that because McAllister ceded control of BDI on the eve of bankruptcy, neither we nor the restructuring agent of BDI (appointed on the same day that BDI declared bankruptcy) could be certain that the documents the Division received from BDI were complete. Mettenburg offered that Mr. Leavitt and the Division could discuss generally the documents in McAllister's possession in order to determine if there was some type of resolution.

21. Mr. Leavitt stated that his client was creating an inventory of the responsive documents in his possession, and requested that the Division provide him with an inventory of all documents provided by BDI, which he would then compare against the documents in McAllister's possession. Ms. Mettenburg advised him the Division could not provide him with

an inventory of documents received by BDI, if any, because of the confidential nature of the Division's investigations.

22.     Mr. Leavitt then requested that McAllister be offered immunity if he produced documents responsive to the Subpoena, based on the act of production privilege.

23.     Ms. Mettenburg advised Mr. Leavitt the Division does not believe that the privilege applies to corporate documents, and that a blanket assertion of the privilege for non-corporate documents was not proper.

24.     On March 8, 2016, Ms. Mettenburg and I again spoke by telephone with Mr. Leavitt to determine whether McAllister had created the inventory of documents referred to on the February 19 call, and whether he would produce non-privileged documents responsive to the Subpoena.

25.     Mr. Leavitt confirmed the creation of the inventory by McAllister, but reiterated his client's position that he believed he could assert a Fifth Amendment privilege against self-incrimination with respect to the production of documents requested by the Commission's Subpoena.

26.     Mr. Leavitt again requested that the Division provide him with an inventory of the documents received by the Division from BDI, and Ms. Mettenburg again stated that the Division could not produce such an inventory due to the confidential nature of its investigations.

27.     Mr. Leavitt refused to produce the inventory created by McAllister because the privilege McAllister was asserting was to the "act of production," not to specific documents.

28.     Ms. Mettenburg and I restated the Division's position that there is no Fifth Amendment privilege as to corporate documents and that a blanket, non-specific, invocation of the privilege as to all documents was improper, even if McAllister possessed non-corporate

documents. We again requested that McAllister produce any non-privileged responsive documents.

29. Mr. Leavitt advised that he would not review McAllister's thousands of documents "unless a federal judge tells [him] he has to," because McAllister has "bigger fish to fry," specifically FBI involvement and criminal implications.

30. Ms. Mettenburg asked Mr. Leavitt (or his co-counsel David Botsford) to let us know within a week whether or not McAllister would produce responsive documents or would be asserting a Fifth Amendment privilege, and told Mr. Leavitt that if McAllister continued to assert a blanket privilege, the Division would be forced to consider a subpoena enforcement action.

31. Three weeks later, on March 29, 2016 Mr. Leavitt responded to an email from me dated March 22, 2016, and confirmed that McAllister was asserting a "Fifth Amendment claim to the *act of producing* such document[s]." (Emphasis in original.) (Attached as Exhibit 5 is a true and correct copy of email correspondence dated March 22 and March 29, 2016.)

32. On April 8, 2016, I sent a letter to Mr. Leavitt setting forth the CFTC's position that McAllister has no Fifth Amendment privilege as to corporate documents of BDI and that a blanket assertion of the Fifth Amendment is an inappropriate response to the Subpoena. (Attached as Exhibit 6 is a true and correct copy of the April 8, 2016 letter from Auxter to Leavitt.) The letter asked Mr. Leavitt to provide an adequate response to the Subpoena issued more than two months prior. (*Id*.) Otherwise, I advised the Commission would seek a federal court order enforcing the subpoena with an award of attorney's fees to the Commission for seeking such relief. (*Id*.)

7

33.     On April 28, 2016, Mr. Leavitt responded to my April 8 letter, and stated that McAllister had a "viable 5th Amendment privilege to the 'act of production.'" (Attached as Exhibit 7 is a true and correct copy of Leavitt's April 28, 2016 letter to the Division.) Mr. Leavitt's letter stated that he "stand[s] willing and ready to cooperate with your agency," but did not agree to produce any non-privileged documents. (*Id.*)

34.     To date, McAllister has neither appeared nor produced the documents sought in the Subpoena.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:  May 23, 2016                            s/J. Alison Auxter
                                                                     J. Alison Auxter

# Exhibit 1

To the Declaration of J. Alison Auxter
in Support of Application for an Order to
Show Cause and Order Requiring Compliance
with Administrative Subpoena

## Table of Contents

Report Section Summary                                               2

Business Overview                                                    2

Quick Analysis Flags                                                 3

Associate Analytics Chart                                            3

Phone Numbers                                                        5

Businesses with Same Address                                         5

Businesses with Same Phone Number                                   11

Business Finder Records                                             11

D&B Market Identifier Records                                       12

Lawsuit Records                                                     13

Docket Records                                                      13

Business Contacts/Executives Associated with Business              14

Report section(s) with no matches                                  14

## Report Section Summary

Business Overview (1)

Quick Analysis Flags (1)

Associate Analytics Chart (1)

Phone Numbers (1)

Businesses with Same Address (3)

Businesses with Same Phone Number (1)

Business Finder Records (1)

D&B Market Identifier Records (1)

Lawsuit Records (1)

Docket Records (2)

Business Contacts/Executives Associated with Business (3)

## Business Overview

**Company Location (Source: Google Maps)**



| | |
|---|---|
| **Address:** | LL 1 700 LAVACA ST |
| | AUSTIN, TX 78701 |
| | TRAVIS COUNTY |

| | |
|---|---|
| **Ticker Symbol:** | |
| **Date of Incorporation:** | 08/30/1999 |
| **Year Established:** | |
| **Status:** | |
| **Primary SIC Code:** | 509411 |
| **DUNS:** | 12-544-7990 |
| **Current Outstanding Shares:** | |

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 12 of 78

**Shareholders:**
**Number of Employees:**          5 TO 9

**Fiscal Year End:**
**Latest Annual Financial Date:**
**Web Address:**                  www.bulliondirect.com


**Business Description:**


## Quick Analysis Flags

List of Possible Quick Analysis Flags

| | |
|---|---|
| OFAC listing | No |
| Global Sanctions | No |
| Business Address Used as Residential Address | No |
| Prison Address on Record | No |
| P.O. Box listed as Address | No |
| Bankruptcy | No |
| Other Listings Linked to Business Phone Number | YES |
| Other Businesses Linked to the Business Address | No |
| Other Businesses Linked to Same FEIN | No |
| Key Nature of Suit | No |
| Pending Class Action | No |
| Change in Principal Leadership | No |
| Going Concern | No |
| MSB listing | No |

# REDACTED

REDACTED

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 14 of 78

| | | | | |
|---|---|---|---|---|
| Mcallister, Charles H | AUSTIN, TX 78701 | Number | NO | NO |
| | REDACTED | Shared Phone | | |
| Mcallister, Charles H | | Number | NO | NO |
| | | Named | | |
| | AUSTIN, TX 78749 | Executive | | |

REDACTED

---

## Phone Numbers

**1. Business**                      **Phone #**

BULLIONDIRECT, INC.                 (512) 462-2646

---

## Businesses with Same Address

700 LAVACA ST, AUSTIN, TX 78701

**Company Name**

REDACTED

REDACTED

NUCLEO DEVELOPMENT COMPANY, LLC

# REDACTED

700 LAVACA ST # 1400, AUSTIN, TX 78701
TRAVIS

**Company Name**

# REDACTED

NUCLEO DEVELOPMENT COMPANY, LLC

REDACTED

REDACTED

700 LAVACA ST STE 1400, AUSTIN, TX 78701-3102
TRAVIS

**Company Name**

REDACTED

REDACTED

# REDACTED

## Businesses with Same Phone Number

(512) 462-2646

**Business**

BULLIONDIRECT, INC.

BULLIONDIRECT, INC

## Business Finder Records

| | | | |
|---|---|---|---|
| **Business Name:** | **BULLION DIRECT INC** | | |
| **Business Address:** | 700 LAVACA ST # 1400 | | |
| | AUSTIN, TX 78701 | | |
| **County:** | TRAVIS | **Phone:** | (512) 462-2646 |
| **Primary SIC:** | 509411 METALS-PRECIOUS | **Business Specific SIC:** | |
| | SHEET WIRE TUBING | | |
| | (WHLS) | | |
| **Franchise/Specialty:** | | **Additional Business Information:** | |
| **Organization:** | FIRM | **Status:** | |
| **Publicly-Held Business:** | | **Sales from Location:** | $10,000 TO 19,999 |
| **Employees at Location:** | 5 TO 9 | **Population of Area:** | 500,000 PLUS |
| **Ad Size:** | REGULAR LISTING | | |
| **Contact for Location:** | MCALLISTER, CHARLES | **Title:** | OWNER |

Data by Infogroup, Copyright 2015, All Rights Reserved.

## D&B Market Identifier Records

**700 LAVACA ST STE 1400 AUSTIN, TX 78701**
**TRAVIS COUNTY**

| | | | |
|---|---|---|---|
| **Business Name:** | BULLIONDIRECT, INC. | **Related Name(s):** | |
| **Date of Incorporation:** | | **State of Incorporation:** | |
| **Year Started:** | 1999 | | |
| **Business Address:** | 700 LAVACA ST STE 1400 | **Phone:** | (512) 462-2646 |
| | AUSTIN, TX 78701 | | |
| **County:** | TRAVIS COUNTY | | |
| **Executive Name:** | CHARLES H MCALLISTER | **Executive Title:** | PRESIDENT |
| **Executive Name:** | REDACTED | **Executive Title:** | MANAGER |
| **Line of Business:** | COMMODITY CONTRACT BROKER | **Industry Group:** | FINANCE, INSURANCE, AND REAL ESTATE |
| **Primary SIC:** | 6221 | **SIC Description:** | COMMODITY CONTRACTS BROKERS, DEALERS |
| **Primary SIC:** | 6221 0000 | **SIC Description:** | COMMODITY CONTRACTS BROKERS, DEALERS, NSK |
| **Annual Sales:** | $1,600,000-ESTIMATED | **Annual Sales Revision Date:** | 06/18/2015 |
| **1-Yr-Ago:** | $ NOT AVAILABLE | | |
| **3-Yr-Ago:** | $ NOT AVAILABLE | | |
| **Sales Growth:** | % | **Sales Territory:** | U.S. |
| **Number of Accounts:** | | **Net Worth:** | |
| **Employees Total:** | 16 | **Employees Here:** | 16-ACTUAL |
| **1-Yr-Ago:** | 16 | **Employment Growth:** | % |
| **3-Yr-Ago:** | 16 | | |
| **MSA Code:** | 0640 | **MSA Name:** | AUSTIN-SAN MARCOS, TX |
| **Square Footage:** | 3100 | **Occupancy Type:** | OWNED |
| **Bank Name:** | | **Bank DUNS Number:** | |
| **Accounting Firm:** | | | |
| **Business Is A:** | SINGLE LOCATION SMALL BUSINESS | **Establishment Is:** | US OWNED |

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 22 of 78

| | |
|---|---|
| **DUNS:** | 12-544-7990 |

| | | |
|---|---|---|
| **Parent Company Name:** | | **Parent Company DUNS Number:** |
| **Ultimate Company Name:** | | **Ultimate Company DUNS Number:** |
| **Headquarters Company Name:** | | **Headquarters Company DUNS Number:** |
| **Last Update to Record:** | 05/20/2015 | |

Data by Dun & Bradsreet COPYRIGHT © 2015 DUN & BRADSTREET, INC.

## Lawsuit Records

| | | | | |
|---|---|---|---|---|
| **Case Number:** | D1GN06004108 | **Case Title:** | **Date Filed:** | 10/27/2006 |

### PLAINTIFF INFORMATION

| | | |
|---|---|---|
| **Plaintiff Name:** | REDACTED | |
| **DOB:** | **Gender:** | |
| **Business Dun(s):** | **Headquarters' Dun(s):** | |
| **SSN(s):** | | |

### DEFENDANT INFORMATION

| | | |
|---|---|---|
| **Defendant Name:** | BULLION DIRECT INC | |
| **Role:** | **Foreign Registration:** | |
| **DOB:** | **Gender:** | |
| **Business Dun(s):** | **Headquarters' Dun(s):** | |
| **SSN(s):** | **Driver's License:** | |

### COURT & CASE INFORMATION

| | | | |
|---|---|---|---|
| **Case Title:** | | **Case Number:** | D1GN06004108 |
| **Case Status:** | | **Status Date:** | 10/27/2006 |
| **Estate Status:** | | **Case Description:** | |
| **Date Filed:** | 10/27/2006 | **Location Filed:** | TRAVIS |
| **Filing Type:** | | **State Filed:** | TX |
| **Filing Office Address:** | 1000 GUADALUPE AUSTIN, TX 78701 | **Reported Date:** | 10/27/2006 |
| **County:** | TRAVIS | | |
| **Judge:** | | **Court Location:** | |
| **Court Name:** | TRAVIS COUNTY CIVIL DISTRICT COURT | **Court Phone:** | |
| **Trial Type:** | | **Trial Length:** | |
| **Trial Date:** | | | |

## Docket Records

| | **Docket Title** | **Docket Number** | **Filing Date** | **Court** | **Nature of Suit** | **Company Interest** |
|---|---|---|---|---|---|---|
| 1. | BULLION DIRECT, INC. v. KAPPOS | 1:10-CV-00313 | 02/26/2010 | D.D.C. | OTHER STATUTES: OTHER | |

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 23 of 78

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | STATUTORY ACTIONS (890),OTHER FEDERAL STATUTES,OTHER FEDERAL STATUTORY ACTIONS | |
| 2. | BULLION DIRECT, INC. v. KAPPOS | 1:10-CV-00313 | 02/26/2010 | D.D.C. | OTHER STATUTES: OTHER STATUTORY ACTIONS (890),OTHER FEDERAL STATUTES,OTHER FEDERAL STATUTORY ACTIONS | Plaintiff |

## Business Contacts/Executives Associated with Business

| Name | Title | Additional Information |
|---|---|---|
| CHARLES, MCALLISTER | OWNER | |
| REDACTED | MANAGER | |
| CHARLES, H, MCALLISTER | PRESIDENT | |

## Report section(s) with no matches

People with Same Address, People with Same Phone Number, FEIN Records, Fictitious Business Names, Executive Affiliations, Executive Profile Records, WORLDSCOPE Company Profile, Current Stock Price & Trading Data, Stock Performance, Annual Financials, Supplementary Data, Growth Rates, Fundamental Ratios, Money Service Business Records, Foreign Business Statistics, Exchange Rates, D&B PCI, WorldBase Records, Corporate Filings, WORLDSCOPE Executive Officers, Business Profile Records, Current Officers & Directors, Previous Officers , Global Sanctions, Arrest Records, Criminal Records, Professional Licenses, OFAC Infractions, Liens & Judgments, Federal Case Law, State Case Law, Bankruptcy Records, Real Property & Deed Transfers, Real Property Pre-Foreclosure Records, UCC Filings, SEC Filings, Other Documents Related to SEC Filings, Other Securities Filings, DMV Records, FAA Aircraft Registrations, Watercraft, Excluded Parties List System

# Exhibit 2

To the Declaration of J. Alison Auxter
in Support of Application for an Order to
Show Cause and Order Requiring Compliance
with Administrative Subpoena



**U.S. COMMODITY FUTURES TRADING COMMISSION**
4900 Main Street, Suite 500
Kansas City, Missouri 64112
Telephone: (816) 960-7700
Facsimile: (816) 960-7750
www.cftc.gov

Division of
Enforcement

J. ALISON AUXTER
TRIAL ATTORNEY
(816) 960-7718
AAUXTER@CFTC.GOV

January 21, 2016

*Via Electronic Mail to randy@randyleavitt.com*

Charles McAllister
c/o Randy Leavitt
The Law Office of Randy T. Leavitt
1301 Rio Grande Street
Austin, TX 78701

**Re:** *Certain Persons Engaged In Unlawful Retail Commodity Transactions*

Dear Mr. McAllister:

Enclosed is a subpoena issued by the Division of Enforcement (Division) of the U.S. Commodity Futures Trading Commission (CFTC) in connection with an ongoing investigation. The subpoena requires the custodian of records to appear and testify before the CFTC, at 4900 Main Street, Suite 500, Kansas City, MO 64112 on February 11, 2016, at 9:30 a.m., and continuing from day to day until completed, and to produce certain documents. The custodian of records is excused from appearing at the appointed time for testimony if the documents requested by the subpoena are produced by February 4, 2016, in compliance with the requirements set forth in Schedule A to the subpoena. Please contact me upon receipt of this subpoena.

The Division requests that you not inform any persons of the existence of this subpoena. If you have any concerns in this regard, please contact me immediately by phone *before* notifying any other persons.

Enclosed for your reference is an eleven-page document entitled *CFTC Data Delivery Standards*, which details how to produce electronic data to the CFTC. If you have any questions, you can reach me at (816) 960-7718.

Sincerely,

J. Alison Auxter

Enclosures (2)



**U.S. COMMODITY FUTURES TRADING COMMISSION**
4900 Main Street, Suite 500 Kansas City, Missouri 64112
Telephone: (816) 960-7700
Facsimile: (816) 960-7750
www.cftc.gov

Division of
Enforcement

# SUBPOENA DUCES TECUM

January 21, 2016

TO:    Charles McAllister

**YOU ARE HEREBY COMMANDED** to appear before Margaret Aisenbrey, Alison Auxter, Jennifer Chapin, Lauren Fulks, Rachel Hayes, James Humphrey, Rebecca Jelinek, Jeffrey LeRiche, Charles Marvine, Jo Mettenburg, Christopher Reed, Peter Riggs, Elsie Robinson, Thomas Simek, Allison Sizemore, Nicholas Sloey and Stephen Turley, officers of the U.S. Commodity Futures Trading Commission (CFTC), at the CFTC's Kansas City Office, 4900 Main Street, Suite 500, Kansas City, MO 64112, on **February 11, 2016 at 9:30 a.m.**, to give testimony under oath and to produce all books, papers, documents, and other tangible things specified in the attached Schedule A in connection with the investigation conducted by the CFTC in the matter of:

**Certain Persons Engaged In Unlawful Retail Commodity Transactions**

Production of the requested records by the close of business on **February 4, 2016** in accordance with the instructions contained in the attached Schedule A, will satisfy the requirements of this subpoena and obviate the need for a personal appearance by you.
****************************************************************************

**FAILURE TO COMPLY WITH THIS SUBPOENA MAY RESULT IN THE COMMENCEMENT OF A LEGAL ACTION IN THE UNITED STATES DISTRICT COURT TO COMPEL COMPLIANCE WITH THE REQUIREMENTS HEREOF.**
****************************************************************************

Issued January 21, 2016 in Kansas City, MO by:

J. Alison Auxter

**NOTICES TO WITNESS:**

*Fees and Mileage:*  *Fees and mileage need not be tendered to the witness upon service of a subpoena issued in behalf of an officer or employee of the CFTC.  28 U.S.C. § 1825(c); 31 U.S.C. § 3324(b); 17 C.F.R. § 11.4. However, after giving testimony pursuant to this subpoena, the witness may request of the Commission, and the Commission will pay, the same fees and mileage that are paid to witnesses in the courts of the United States.  17 C.F.R. §11.4; see also 28 U.S.C. § 1821.*

*False, Misleading or Fraudulent Statements:*  *Making a false, misleading or fraudulent statement in testimony or documents produced in response to this subpoena may be a civil and/or criminal violation that can result in punishment by fine or imprisonment or both.  Specifically, a false, misleading or fraudulent statement of material fact or omission of material fact that is necessary to make a statement not misleading, may constitute a violation of Section 6(c)(2) of the Commodity Exchange Act (7 U.S.C. §§ 9(2)), Section 9(a)(3) of the Commodity Exchange Act (7 U.S.C. §13(a)(3)), and/or Section 1001 of Title 18, Crimes and Criminal Procedure (18 U.S.C. §1001)*

## RETURN OF SERVICE

**In the Case of a Natural Person:**

[ ]      handing it to the person named herein.

[ ]      leaving it at the person's office with the following person in charge:

_____

[ ]      leaving it at the person's office in the following conspicuous place:

_____

[ ]      leaving it at the person's usual place of abode, street address:

_____

[ ]      mailing by certified or registered mail to the following address:

_____

[ ]      mailing by UPS to the following address:

_____

[X]     the following method by which actual notice was given:

       Electronic mail to randy@randyleavitt.com


**In the case of service upon other than a natural person:**

[ ]      handing it to the following registered agent for service or other officer, director or agent in charge of such office (name & title):

_____

[ ]      certified or registered mail to the entity's following agent or representative:

[ ]      mailing by UPS to the following address:

_____

[ ]      the following method by which actual notice was given:

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I served this subpoena in accordance with the method noted above.*

*Dated:* January 21, 2016

J. Alison Auxter

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are expressly incorporated into each specific demand for production as if fully stated therein:

A.     The terms **"McAllister," "you"** and **"your"** shall refer to Charles McAllister as well as his agents, employees, assigns or representatives.

B.     The term **"BDI"** shall refer to Bullion Direct Inc.

C.     The term **"Nucleo"** shall refer to Nucleo Development Company, LLC, Nucleo Exchange, and any related entities.

D.     The term **"CFTC"** refers to the U.S. Commodity Futures Trading Commission.

E.     **"Including"** and **"includes"** are used in the broadest sense of the terms and specification of a particular matter included in a request and is not meant to exclude any other documents that might be responsive to a specific request.

F.     The terms **"communication"** and **"communications"** refer to all manners of transmitting or receiving information, opinions, or thoughts, orally, in writing, in person, telephonically, electronically, or by any other means.

G.     **"Relating to"** means analyze, appraise, assess, characterize, comment on, concern, consider, constitute, contain, deliberate, delineate, describe, discuss, evaluate, evidence, explicate, pertain to, recommend, record, refer to, reflect, report on, set forth, show, or study.

H.     **"Person"** means any natural person, and includes individuals, partnerships, corporations, trusts, any business, legal, or governmental entities, associations, or political subdivisions.

I.     The term **"document(s),"** for purposes of this request, is any writing, drawing, graph, chart, photograph, phonographic record, audio tape, videotape, computer disk, or any other data compilation from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form. **"Document(s)"** means all writings or printed matter of any kind, including, without limitation: records, correspondence, memoranda, notes, rolodexes, address books, diaries, statistics, e-mail, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice or intraoffice communications, telephone message slips, offers, notations of conversations, bulletins, drawings, plans, computer printouts, computer input or output, teletypes, facsimiles, invoices, worksheets, ledger books, books of accounts, and all drafts, alterations, modifications, changes and amendments of any of the foregoing. The term **"document(s)"** also includes all graphic or aural records or representations of any kind, including without limitation, photographs,

charts, graphs, microfilm, videotape, recordings, motion pictures, tapes, cassettes, digital images and discs.

The term **"document(s)"** also refers to each and every document in your actual or constructive possession, including but not limited to: (i) all documents within your custody or control or the custody or control of any of your present or former agents, employers, employees, partners, and (ii) all documents which you have a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate document within the meaning of this term. **"Document(s)"** also includes the file and folder tabs associated with each original and copy. You should produce the specified materials to the CFTC as they are kept in the usual course of business or shall organize and label them to correspond with the categories in this request.

J.      The term **"possession"** denotes actual or constructive possession. For example, a document is in your possession if it is within your custody or control, if you have a legal or equitable right to obtain such document from another person, or if it is in the custody or control of any of your attorneys, agents, representatives or assigns.

K.      If any of documents responsive to any of the paragraphs of this Schedule A will not be produced on the basis of a claim of privilege, or for any other reason, please set forth the following information concerning each documents:

      i)      the type and title of the document;

      ii)     the date of the document;

      iii)    the person who prepared or wrote the document;

      iv)     a description of the document's subject matter and physical size;

      v)      the address of each recipient of the original or a copy of the document, together with the date or approximate date which each recipient received the document;

      vi)     all other persons to whom the contents of the document have been disclosed, the date of such disclosure, and the means of such disclosure; and

      vii)    the nature of the privilege or the rule of law relied upon, including who is asserting the privilege or rule, and the basis for the privilege or rule, or other reason for non-production.

L.      If you decline to produce a document because you believe that the document has been destroyed, provide the following information for this document:

      i)      the type and title of the document;

      ii)     the date of the document;

iii)   the person who prepared or wrote the document;

iv)   a description of the document's subject matter and physical size;

v)   the address of each recipient of the original or a copy of the document, together with the date or approximate date that each recipient received the document;

vi)   all other persons to whom the contents of the document have been disclosed, the date such disclosure took place, and the means of such disclosure;

vii)   the date the document was destroyed; and

viii)   the person who ordered or authorized such destruction.

M.   References to the singular shall include the plural and references to the plural shall include the singular.

N.   Any reference to a person or entity shall include any natural person or any business, legal, or governmental entity or association, and any such person's or entity's directors, officers, employees, agents, representatives, receivers, transferees, beneficiaries, assigns, partners, affiliates, successors in interest, employees, attorneys, consultants, accountants and representatives.

O.   All documents called for by this subpoena are to be produced in unredacted form. If you make any redactions, such redactions must be clearly marked and the reasons for such redactions must be given in accordance with paragraph "M" above.

P.   If any documents are called for by more than one specification, it is not necessary to submit more than one copy of the document.

Q.   Please produce all documents in electronic format in accordance with the CFTC Division of Enforcement's Data Delivery Standards, enclosed herein. All documents should be complete, legible, and arranged in chronological order.

R.   This subpoena should be deemed to be continuing. If additional documents are located, supplementation should be made promptly.

S.   Please produce documents responsive to requests specified in Schedule A for the time period **July 1, 2010 through the date of this Request** (the "**Relevant Period**").

## REQUESTS FOR PRODUCTION

3.     Copies of all documents and communications in your possession related to BDI.

4.     Copies of all documents and communications in your possession related to Nucleo.



U.S. COMMODITY FUTURES TRADING COMMISSION
4900 Main Street, Suite 500
Kansas City, Missouri 64112
Telephone: (816) 960-7700
Facsimile: (816) 960-7750
www.cftc.gov

Division of
Enforcement

J. ALISON AUXTER
TRIAL ATTORNEY
(816) 960-7718
AAUXTER@CFTC.GOV

December 17, 2015

*Via UPS*

Charles McAllister
REDACTED
Austin, TX 78749

**Re:** *Certain Persons Engaged In Unlawful Retail Commodity Transactions*

Dear Mr. McAllister:

Enclosed is a subpoena issued by the Division of Enforcement (Division) of the U.S. Commodity Futures Trading Commission (CFTC) in connection with an ongoing investigation. The subpoena requires the custodian of records to appear and testify before the CFTC, at 4900 Main Street, Suite 500, Kansas City, MO 64112 on January 7, 2016, at 9:30 a.m., and continuing from day to day until completed, and to produce certain documents. The custodian of records is excused from appearing at the appointed time for testimony if the documents requested by the subpoena are produced by January 4, 2016, in compliance with the requirements set forth in Schedule A to the subpoena. Please contact me upon receipt of this subpoena.

The Division requests that you not inform any persons of the existence of this subpoena. If you have any concerns in this regard, please contact me immediately by phone *before* notifying any other persons.

Enclosed for your reference is an eleven-page document entitled *CFTC Data Delivery Standards*, which details how to produce electronic data to the CFTC. Also enclosed is a *Statement to Persons Providing Information About Themselves to the Commodity Futures Trading Commission*. If you have any questions, you can reach me at (816) 960-7718.

Sincerely,

J. Alison Auxter



Division of
Enforcement

**U.S. COMMODITY FUTURES TRADING COMMISSION**
4900 Main Street, Suite 500 Kansas City, Missouri 64112
Telephone: (816) 960-7700
Facsimile: (816) 960-7750
www.cftc.gov

# SUBPOENA DUCES TECUM

December 17, 2015

TO:     Charles McAllister

**YOU ARE HEREBY COMMANDED** to appear before Margaret Aisenbrey, Alison Auxter, Jennifer Chapin, Lauren Fulks, Rachel Hayes, James Humphrey, Rebecca Jelinek, Jeffrey LeRiche, Charles Marvine, Jo Mettenburg, Christopher Reed, Peter Riggs, Elsie Robinson, Thomas Simek, Allison Sizemore, Nicholas Sloey and Stephen Turley, officers of the U.S. Commodity Futures Trading Commission (CFTC), at the CFTC's Kansas City Office, 4900 Main Street, Suite 500, Kansas City, MO 64112, on **January 7, 2016 at 9:30 a.m.**, to give testimony under oath and to produce all books, papers, documents, and other tangible things specified in the attached Schedule A in connection with the investigation conducted by the CFTC in the matter of:

**Certain Persons Engaged In Unlawful Retail Commodity Transactions**

Production of the requested records by the close of business on **January 4, 2016** in accordance with the instructions contained in the attached Schedule A, will satisfy the requirements of this subpoena and obviate the need for a personal appearance by you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**FAILURE TO COMPLY WITH THIS SUBPOENA MAY RESULT IN THE
COMMENCEMENT OF A LEGAL ACTION IN THE UNITED STATES DISTRICT
COURT TO COMPEL COMPLIANCE WITH THE REQUIREMENTS HEREOF.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Issued December 17, 2015 in Kansas City, MO by:

J. Alison Auxter

**NOTICES TO WITNESS:**

*Fees and Mileage:* Fees and mileage need not be tendered to the witness upon service of a subpoena issued in behalf of an officer or employee of the CFTC. 28 U.S.C. § 1825(c); 31 U.S.C. § 3324(b); 17 C.F.R. § 11.4. However, after giving testimony pursuant to this subpoena, the witness may request of the Commission, and the Commission will pay, the same fees and mileage that are paid to witnesses in the courts of the United States. 17 C.F.R. §11.4; see also 28 U.S.C. § 1821.

*False, Misleading or Fraudulent Statements:* Making a false, misleading or fraudulent statement in testimony or documents produced in response to this subpoena may be a civil and/or criminal violation that can result in punishment by fine or imprisonment or both. Specifically, a false, misleading or fraudulent statement of material fact or omission of material fact that is necessary to make a statement not misleading, may constitute a violation of Section 6(c)(2) of the Commodity Exchange Act (7 U.S.C. §§ 9(2)), Section 9(a)(3) of the Commodity Exchange Act (7 U.S.C. §13(a)(3)), and/or Section 1001 of Title 18, Crimes and Criminal Procedure (18 U.S.C. §1001)

## RETURN OF SERVICE

**In the Case of a Natural Person:**

[ ]     handing it to the person named herein.

[ ]     leaving it at the person's office with the following person in charge:

_____

[ ]     leaving it at the person's office in the following conspicuous place:

_____

[ ]     leaving it at the person's usual place of abode, street address:

_____

[ ]     mailing by certified or registered mail to the following address:

_____

[X]    mailing by UPS to the following address:
## REDACTED
Austin, TX 78749

[ ]     the following method by which actual notice was given:

**In the case of service upon other than a natural person:**

[ ]     handing it to the following registered agent for service or other officer, director or agent in charge of such office (name & title):

_____

[ ]     certified or registered mail to the entity's following agent or representative:

[ ]     mailing by UPS to the following address:

_____

[ ]     the following method by which actual notice was given:

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I served this subpoena in accordance with the method noted above.*

*Dated:* December 17, 2015

J. Alison Auxter

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are expressly incorporated into each specific demand for production as if fully stated therein:

A. The terms "**McAllister**," **"you"** and **"your"** shall refer to Charles McAllister as well as his agents, employees, assigns or representatives.

B. The term "**BDI**" shall refer to Bullion Direct Inc.

C. The term "**Nucleo**" shall refer to Nucleo Development Company, LLC, Nucleo Exchange, and any related entities.

D. The term **"CFTC"** refers to the U.S. Commodity Futures Trading Commission.

E. "**Including**" and "**includes**" are used in the broadest sense of the terms and specification of a particular matter included in a request and is not meant to exclude any other documents that might be responsive to a specific request.

F. The terms "**communication**" and "**communications**" refer to all manners of transmitting or receiving information, opinions, or thoughts, orally, in writing, in person, telephonically, electronically, or by any other means.

G. "**Relating to**" means analyze, appraise, assess, characterize, comment on, concern, consider, constitute, contain, deliberate, delineate, describe, discuss, evaluate, evidence, explicate, pertain to, recommend, record, refer to, reflect, report on, set forth, show, or study.

H. "**Person**" means any natural person, and includes individuals, partnerships, corporations, trusts, any business, legal, or governmental entities, associations, or political subdivisions.

I. The term **"document(s),"** for purposes of this request, is any writing, drawing, graph, chart, photograph, phonographic record, audio tape, videotape, computer disk, or any other data compilation from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form. **"Document(s)"** means all writings or printed matter of any kind, including, without limitation: records, correspondence, memoranda, notes, rolodexes, address books, diaries, statistics, e-mail, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice or intraoffice communications, telephone message slips, offers, notations of conversations, bulletins, drawings, plans, computer printouts, computer input or output, teletypes, facsimiles, invoices, worksheets, ledger books, books of accounts, and all drafts, alterations, modifications, changes and amendments of any of the foregoing. The term **"document(s)"** also includes all graphic or aural records or representations of any kind, including without limitation, photographs,

charts, graphs, microfilm, videotape, recordings, motion pictures, tapes, cassettes, digital images and discs.

The term **"document(s)"** also refers to each and every document in your actual or constructive possession, including but not limited to: (i) all documents within your custody or control or the custody or control of any of your present or former agents, employers, employees, partners, and (ii) all documents which you have a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate document within the meaning of this term. **"Document(s)"** also includes the file and folder tabs associated with each original and copy. You should produce the specified materials to the CFTC as they are kept in the usual course of business or shall organize and label them to correspond with the categories in this request.

J.     The term **"possession"** denotes actual or constructive possession. For example, a document is in your possession if it is within your custody or control, if you have a legal or equitable right to obtain such document from another person, or if it is in the custody or control of any of your attorneys, agents, representatives or assigns.

K.     If any of documents responsive to any of the paragraphs of this Schedule A will not be produced on the basis of a claim of privilege, or for any other reason, please set forth the following information concerning each documents:

     i)      the type and title of the document;

     ii)     the date of the document;

     iii)    the person who prepared or wrote the document;

     iv)    a description of the document's subject matter and physical size;

     v)     the address of each recipient of the original or a copy of the document, together with the date or approximate date which each recipient received the document;

     vi)    all other persons to whom the contents of the document have been disclosed, the date of such disclosure, and the means of such disclosure; and

     vii)   the nature of the privilege or the rule of law relied upon, including who is asserting the privilege or rule, and the basis for the privilege or rule, or other reason for non-production.

L.     If you decline to produce a document because you believe that the document has been destroyed, provide the following information for this document:

     i)      the type and title of the document;

     ii)     the date of the document;

iii)     the person who prepared or wrote the document;

iv)     a description of the document's subject matter and physical size;

v)     the address of each recipient of the original or a copy of the document, together with the date or approximate date that each recipient received the document;

vi)     all other persons to whom the contents of the document have been disclosed, the date such disclosure took place, and the means of such disclosure;

vii)     the date the document was destroyed; and

viii)     the person who ordered or authorized such destruction.

M.     References to the singular shall include the plural and references to the plural shall include the singular.

N.     Any reference to a person or entity shall include any natural person or any business, legal, or governmental entity or association, and any such person's or entity's directors, officers, employees, agents, representatives, receivers, transferees, beneficiaries, assigns, partners, affiliates, successors in interest, employees, attorneys, consultants, accountants and representatives.

O.     All documents called for by this subpoena are to be produced in unredacted form. If you make any redactions, such redactions must be clearly marked and the reasons for such redactions must be given in accordance with paragraph "K" above.

P.     If any documents are called for by more than one specification, it is not necessary to submit more than one copy of the document.

Q.     Please produce all documents in electronic format in accordance with the CFTC Division of Enforcement's Data Delivery Standards, enclosed herein. All documents should be complete, legible, and arranged in chronological order.

R.     This subpoena should be deemed to be continuing. If additional documents are located, supplementation should be made promptly.

S.     Please produce documents responsive to requests specified in Schedule A for the time period **July 1, 2010 through the date of this Request** (the "**Relevant Period**").

# REQUESTS FOR PRODUCTION

1.      Copies of all documents and communications in your possession related to BDI.

2.      Copies of all documents and communications in your possession related to Nucleo.



U.S. COMMODITY FUTURES TRADING COMMISSION
WASHINGTON, D.C. 20581

Statement to Persons Providing Information about Themselves to
the Commodity Futures Trading Commission

This document sets forth your legal rights and responsibilities as a person requested to supply information about yourself voluntarily, as a person with recordkeeping obligations under the Commodity Exchange Act or CFTC regulations, or as a person directed to provide sworn testimony or produce documents pursuant to a subpoena of the Commodity Futures Trading Commission ("Commission" or "CFTC"). When applicable, this statement also provides important information about the deposition process for persons providing testimony. Unless stated otherwise, the information below applies whether you are providing information voluntarily, pursuant to the recordkeeping obligations of a registrant, or pursuant to subpoena.

## FALSE STATEMENTS AND DOCUMENTS

Any person who knowingly and willfully makes false or fraudulent statements, whether under oath or otherwise, or falsifies, conceals or covers up a material fact, or submits any false writing or document, knowing it to contain false, fictitious or fraudulent information, is subject to the criminal penalties set forth in 18 U.S.C. § 1001, which include imprisonment of not more than five years, imposition of a substantial fine under the Federal Sentencing Guidelines, or both.

It shall also be unlawful for any person to make any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this Act, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading, as set forth in Section 6(c)(2) of the Commodity Exchange Act, 7 U.S.C. § 9(2).

## PRIVACY ACT

To restrict unauthorized dissemination of personal information, the Privacy Act of 1974, 5 U.S.C. § 552a, limits an agency's ability to disclose such information.[1] Under the Privacy Act, the Commission may disclose protected information as follows: when the individual to whom the record pertains consents in writing; when officers and employees of the Commission need the record to perform their duties; when required by the terms of the Freedom of Information Act, 5 U.S.C. § 552; or when disclosure is for a "routine use" (i.e., one compatible with the purpose for which the information was collected).

---

[1]  Individuals should refer to the full text of the Privacy Act, 5 U.S.C. § 552a, to the Commission's Regulations, 17 C.F.R. § 146, and the CFTC's compilation of System of Record Notices, 76 Fed. Reg. 5974 (Feb. 2, 2011), for a complete list of authorized disclosures and coverage of the Act. Only those disclosures arising most frequently are mentioned in this document.

1



The Privacy Act also requires that, in certain situations, individuals requested to provide information about themselves receive notice of the following:

1.   AUTHORITY FOR SOLICITATION OF INFORMATION.

   a. Recordkeeping for Registered Persons (other than Registered Swap Dealers and Major Swaps Participants).  Sections 4f, 4g and 4n of the Commodity Exchange Act, 7 U.S.C. §§ 6f, 6g, 6n, and Commission Regulations 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34, 1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7 and 33.7, 17 C.F.R. §§ 1.12, 1.14, 1.18, 1.25, 1.31, 1.33, 1.34,1.35, 1.37, 1.55, 3.12, 4.23, 4.33, 32.7, 33.7, require Registered Persons other than Registered Swap Dealers and Major Swaps Participants to keep records and reports of transactions and positions in commodities for future delivery on any board of trade in the United States or elsewhere.  Registered Persons must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission.  All such books and records must be made available for inspection by any representative of the Commission or the Department of Justice.

   b. Recordkeeping for Members of a Registered Entity.  Commission Regulations 1.31, 1.35 and 1.37, 17 C.F.R. §§ 1.31, 1.35, 1.37, require Members of a Registered Entity to keep records and reports of transactions and positions in commodities for future delivery and options on any board of trade in the United States or elsewhere, as well as cash commodities.  Members of a Registered Entity must also keep books and records pertaining to such transactions (including daily trading records, customer records, and information concerning volume of trading) in the form and manner and for such period of time required by the Commission.  All such books and records must be made available for inspection upon request by any representative of the Commission or the Department of Justice.  Commission Rule 1.40, 17 C.F.R. § 1.40, requires each Member of a Registered Entity to furnish to the Commission certain reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity.

   c. Recordkeeping for Large Traders.  Section 4i of the Commodity Exchange Act, 7 U.S.C. § 6i, and Commission Regulations 1.31 and 18.05, 17 C.F.R. §§ 1.31, 18.05, require Large Traders to keep books and records showing, among other things, all details concerning all positions and transactions in the commodity, and in its products and by-products, whether executed through a contract for future delivery, an option contract or a cash contract, and whether such contract is executed through a board of trade, an exempt commercial market, an exempt board of trade, a foreign board of trade or an over-the-counter transaction.  All such books and records, and pertinent information concerning the underlying positions, transactions or activities, must be made available for inspection in a form acceptable to the Commission upon request by any representative of the Commission.

   d. Recordkeeping for Registered Swap Dealers and Major Swaps Participants.  Sections 4r and 4s of the Commodity Exchange Act, 7 U.S.C. §§ 6r, 6s, and Commission Regulations 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23.603, 23.606, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 23.201, 23.202, 23.203, 23.504, 23.505, 23,603, 23.606, 45.2, 46.2, require Swap Dealers ("SDs") and Major Swaps Participants ("MSPs") to keep records of all activities relating to their business with respect to swaps.  The records must be readily accessible throughout the life of the swap and for two years following its termination, and retrievable by the SD or MSP within three business days during the remainder of the retention period.  Each SD and MSP shall make available for disclosure to and inspection by the Commission and its prudential regulator, as

2



applicable, all information required by, or related to, the Commodity Exchange Act and Commission Regulations, including: (i) the terms and condition of its swaps; its swaps trading operations, mechanisms, and practices; financial integrity and risk management protections relating to swaps; and (iv) any other information relevant to its trading in swaps. Such information shall be made available promptly, upon request, to Commission staff and the staff of the applicable prudential regulator, at such frequency and in such manner as is set forth in the Commodity Exchange Act, Commission regulations, or the regulations of the applicable prudential regulator.

e. Recordkeeping by Swaps Participants who are not Registered. Section 4r of the Commodity Exchange Act, 7 U.S.C. § 6r, and Commission Regulations 1.31, 45.2, and 46.2, 17 C.F.R. §§ 1.31, 45.2, 46.2, require non-SD/MSP counterparties to keep records with respect to each swap in which they are a counterparty. Required records must be kept by all swap counterparties throughout the existence of a swap and for five years following termination of the swap. In the case of a non-SD/MSP counterparty, the records must be retrievable by the counterparty within five business days throughout the retention period.

f. Investigations. Sections 6(c) and 8(a) of the Commodity Exchange Act, 7 U.S.C. §§ 9, 12(a), and Commission Rule 11.2, 17 C.F.R. § 11.2, authorize the Commission to conduct investigations. In the course of any investigation or proceeding, the Commission or an officer designated by the Commission may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, require production of documents, and secure voluntary statements or submissions.

g. Whistleblowers. Section 23 of the Commodity Exchange Act, 7 U.S.C. § 26, and Commission Rule 165, 17 C.F.R. § 165, authorize the Commission to obtain information from persons seeking to participate in the Commission's whistleblower program. Commission staff may request information from prospective whistleblowers to determine whether a tip or complaint relates to a violation of the Commodity Exchange Act, to further an investigation into any such violation, and/or to determine whether the person submitting the information is eligible to participate in the program. The Commission will not disclose information that could reasonably be expected to reveal the identity of a whistleblower, except under the circumstances described in Commission Rule 165.4, 17 C.F.R. § 165.4, and Section 23(h)(2) of the Commodity Exchange Act, 7 U.S.C. § 26(h)(2).

2. PURPOSE OF SOLICITATION OF INFORMATION. The Commission's principal purpose in soliciting information from you is to determine whether any person has violated, is violating, or is about to violate the Commodity Exchange Act or the rules and regulations thereunder. In certain circumstances, the Commission may be obtaining information at the behest of a foreign futures authority under Section 12(f) of the Commodity Exchange Act, 7 U.S.C. § 16(f).

3. EFFECT OF NOT SUPPLYING INFORMATION.
   a. Persons Directed to Provide Testimony or Produce Documents Pursuant to Subpoena. Disclosure of information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If the Commission obtains such an order and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt.



b. Persons Requested to Provide Information Voluntarily. There are no direct effects or sanctions for failing to provide any or all of the requested information. If you do provide information, however, you should note the sanctions for false statements and documents described above.

c. Registered Persons. Disclosure of requested books or records is mandatory pursuant to the provisions listed in paragraph 1.a. above. Failure to submit or make available for inspection the requested information constitutes a violation of the Commodity Exchange Act and Commission Regulations and may result in any or all of the following under Sections 6(c), 6(d) or 6c of the Commodity Exchange Act, 7 U.S.C. §§ 9, 13b, 13a-1, 15:

   1) Institution of an action by the Commission to enjoin such a violation or enforce compliance;

   2) Upon proper showing, granting of a temporary or permanent injunction or restraining order without bond;

   3) Upon application by the Commission, issuance of writs of mandamus or orders offering like relief commanding compliance with the Commodity Exchange Act;

   4) Imposition of a civil penalty of not more than the greater of $140,000 or such higher inflation adjusted amount as provided by Regulation 143.8, 17 C.F.R. §143.8 or triple the monetary gain to the person for each violation;

   5) At the request of Commission, institution of an action by the Attorney General;

   6) Prohibition of trading on, or subject to the rules of, a registered entity and require all registered entities to refuse the person all privileges;

   7) Suspension or revocation of registration with the Commission;

   8) Required payment of restitution to customers for damages proximately caused by violations;

   9) Entry of a cease and desist order;

   10) Imposition of a restraining order prohibiting you from destroying, altering or disposing of, or refusing to allow authorized representatives of the Commission to inspect, when and as requested, such books, records or other documents; and

   11) Imposition of a restraining order prohibiting you from withdrawing, transferring, removing, dissipating or disposing of any funds, assets or other property.

d. Whistleblowers. Failure to provide information requested by Commission staff in relation to a whistleblower submission may affect your ability to receive a whistleblower award, or the potential amount of an award.

4. ROUTINE USES OF INFORMATION. The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other government agencies. Information which you provide may be used in the

4



routine operation of the Commission, which includes law enforcement, review of legislative and regulatory proposals, regulation of the commodity futures and swaps markets, and review of reports and documents filed with the Commission.

Specific routine uses include the following:[2]

a. Information may be used by the Commission in any administrative proceeding before the Commission, in any injunctive action authorized under the Commodity Exchange Act, or in any other action or proceeding in which the Commission or its staff participates as a party or the Commission participates as amicus curiae.

b. Information may be disclosed to the Department of Justice, the Securities and Exchange Commission, the United States Postal Service, the Internal Revenue Service, the Department of Agriculture, the Office of Personnel Management, and to other Federal, state, local, territorial or tribal law enforcement or regulatory agencies for use in meeting their statutory and regulatory requirements.

c. Information may be given to any "registered entity," as defined in Section 1a of the Commodity Exchange Act, 7 U.S.C. § 1a, if the Commission has reason to believe that such information will assist the registered entity in carrying out its responsibilities under the Act. Information may also be given to any registered futures association registered under Section 17 of the Commodity Exchange Act, 7 U.S.C. § 21, (e.g., the National Futures Association) to assist it in carrying out its self-regulatory responsibilities under the Act, and to any national securities exchange or national securities association registered with the Securities and Exchange Commission to assist those organizations in carrying out their self-regulatory responsibilities under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

d. At the discretion of the Commission staff, information may be given or shown to anyone during the course of a Commission investigation if the staff has reason to believe that the person to whom it is disclosed may have further information about the matters discussed therein, and those matters appear relevant to the subject of the investigation.

e. Information may be included in a public report issued by the Commission following an investigation, to the extent that this is authorized under section 8 of the Commodity Exchange Act, 7 U.S.C. § 12. Section 8 authorizes publication of such reports but contains restrictions on the publication of certain types of sensitive business information developed during an investigation. In certain contexts, some of this information might be considered personal in nature.

f. Information may be disclosed to a Federal agency in response to its request in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract or the issuance of a license, or a grant or other benefit by the requesting agency, to the extent that the information may be relevant to the requesting agency's decision on the matter.

g. Information may be disclosed to a prospective employer in response to its request in connection with the hiring or retention of an employee, to the extent that the information is believed to be relevant to the prospective employer's decision in the matter.

---

[2] See CFTC compilation of System of Record Notices, including routine uses, at 76 Fed. Reg. 5974 (Feb. 2, 2011).

5



h. Information may be disclosed to any person, pursuant to Section 12(a) of the Commodity Exchange Act, 7 U.S.C. § 16(a), when disclosure will further the policies of that Act or of other provisions of law. Section 12(a) authorizes the Commission to cooperate with various other government authorities or with "any person."

i. Where information, either alone or in conjunction with other information indicates a violation or potential violation of law – criminal, civil or regulatory in nature – the relevant information may be disclosed to the appropriate Federal, state, local, territorial, tribal or foreign law enforcement authority or other appropriate entity charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law.

j. Information may be disclosed to the General Services Administration, or the National Archives and Records Administration, for the purpose of records management inspections conducted under the authority of 44 U.S.C. §§ 2904 and 2906.

k. Information may be disclosed to foreign law enforcement, investigatory or administrative authorities in order to comply with requirements set forth in international arrangements, such as memoranda of understanding.

l. Information may be disclosed to contractors, grantees, volunteers, experts, students and others performing or working on a contract, service, grant, cooperative agreement or job for the Federal government when necessary to accomplish an agency function.

m. Information may be disclosed to the Merit Systems Protection Board, including the Office of Special Counsel, for the purpose of litigation, including administrative proceedings, appeals, special studies of the civil service and other merit systems.

n. Information may be disclosed to the Department of Justice or in a proceeding before a court, adjudicative body or other administrative body which the agency is authorized to appear, when:

    i. the agency, or any component thereof; or

    ii. any employee of the agency in his or her official capacity; or

    iii. any employee of the agency in his or her official capacity where the Department of Justice or the agency has agreed to represent the employee; or

    iv. the United States, when the agency determines that litigation is likely to affect the agency or any of its components;

is a party to litigation or has an interest in such litigation, and the use of such records by the Department of Justice or the agency is deemed by the agency to be relevant and necessary to the litigation; provided, however, that in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected.

o. Information may be disclosed to a Member of Congress or staff acting upon the Member's behalf when the Member or staff requests the information on behalf of, or at the request of, the individual who is the subject of the record.

p. Information related to any traders or the amount or quantity of any commodity purchased or sold by such traders may be disclosed to any committee of either House of Congress

6



upon its request, acting within the scope of its jurisdiction, pursuant to the Commodity Exchange Act, including Section 8(e) of such Act, 7 U.S.C. § 12(e), and the rules and regulations promulgated thereunder.

q. Information may be disclosed to another Federal agency, to a court or a party in litigation before a court or in an administrative proceeding being conducted by a Federal agency, when the Government is a party to the judicial or administrative proceeding.

r. Information may be disclosed to appropriate agencies, entities and individuals when:

    i. the Commission suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised;

    ii. the Commission has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the Commission or another agency or entity) that rely upon the compromised information; and

    iii. the disclosure made to such agencies, entities, and individuals is reasonably necessary to assist in connection with the Commission's efforts to respond to the suspected or confirmed compromise and prevent, minimize or remedy such harm.



## FREEDOM OF INFORMATION ACT

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Commission's rules and regulations pursuant thereto, 17 C.F.R. § 145, generally provide for disclosure of information to the public, unless information falls within a specified exemption. Commission Rule 145.9, 17 C.F.R. § 145.9, establishes the procedure by which you may request that certain sensitive information not be disclosed pursuant to a FOIA request.

## INFORMAL PROCEDURE RELATING TO THE RECOMMENDATION OF ENFORCEMENT PROCEEDINGS

As a result of facts gathered in an investigation, the Division of Enforcement may decide to propose an enforcement action against one or more individuals. Under the Informal Procedure Relating to the Recommendation of Enforcement Proceedings,[3] the Division of Enforcement, in its discretion, may inform persons to be named in such actions of the nature of the allegations pertaining to them. The Division may also, in its discretion, advise such persons that they may submit a written statement before the consideration by the Commission of any staff recommendation for the commencement of the proceeding. Unless otherwise provided, such written statements must be submitted within 14 days after persons are informed by the Division of Enforcement of the nature of the allegations pertaining to them.

## SMALL BUSINESS REGULATORY AND ENFORCEMENT FAIRNESS ACT

Your comments are important. If you wish to comment on the enforcement or regulatory actions of the Commodity Futures Trading Commission, please call the Small Business Liaison in the Office of General Counsel at (202) 418-5120. You may also wish to contact the Small Business and Agriculture Regulatory Enforcement Ombudsman, or one of the 10 Regional Fairness Boards, which were established by the Small Business Regulatory and Enforcement Fairness Act. The Ombudsman and Boards receive comments from small businesses about Federal agency enforcement actions. The Ombudsman will annually evaluate the enforcement activities and rate each agency's responsiveness to small business. If you wish to contact the Ombudsman to comment on the enforcement actions of the CFTC, please call1-888-REG-FAIR (1-888-734-3247).

---

[3] The Informal Procedure has been adopted as Appendix A to Part 11 of the Commission's Regulations, 17 C.F.R. § 11, Appendix A. Appendix A more fully sets forth the substantive and procedural provisions of the Informal Procedure.

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 49 of 78



# CFTC Data Delivery Standards

## Effective: August 10, 2015

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC). Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.



# CFTC Data Delivery Standards
*Effective: August 10, 2015*

This document describes the technical requirements for electronic document productions to the Commodity Futures Trading Commission (CFTC).

**\*\*Any proposed file formats other than those described below must be discussed with the legal and technical staff of the CFTC Division of Enforcement prior to submission.\*\***

## Contents

General Instructions ........................................................................................................... 2

Electronic Discovery Protocols .......................................................................................... 3

Delivery Formats ................................................................................................................ 3

  I.   Native File Production ................................................................................................ 3

    1.   Emails ................................................................................................................ 3

    2.   Account Statements .......................................................................................... 3

    3.   Instant Messages (IMs) .................................................................................... 3

    4.   Audio Files ........................................................................................................ 4

    5.   Video Files ........................................................................................................ 4

    6.   Transcripts ........................................................................................................ 5

  II.   Imaged Collections .................................................................................................... 5

    1.   Images ................................................................................................................ 5

    2.   Concordance Image® Cross-Reference File ................................................... 5

    3.   Data File ............................................................................................................ 6

    4.   Text .................................................................................................................... 9

    5.   Linked Native Files .......................................................................................... 9

  III.   Productions of Adobe PDF Files ................................................................................ 9

  IV.   Productions of Website Content ................................................................................. 9

  V.   Productions of Forensic Images of Computer Media ............................................... 10

  VI.   Productions of Forensically Acquired Mobile Device Data ..................................... 10

  VII.   FTP (File Transfer Protocol) Submission ............................................................... 10

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 51 of 78

# CFTC Data Delivery Standards
*Effective: August 10, 2015*

## General Instructions

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.

(Note: An Adobe PDF file is **not** considered a native file unless the document was initially created as a PDF.)

In the event produced files require the use of proprietary software not commonly found in the workplace, the CFTC will explore other format options with the producing party.

In regards to imaged collections, the use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.

General requirements for <u>ALL</u> document productions are:

1. **Production of data via email is unacceptable.**
2. Reference the specific portion of the request to which you are responding, along with a summary of the number of files in the production, so that we can confirm everything is loaded into our review system.
3. All native file submissions must be organized **by custodian** unless otherwise instructed.
4. All load-ready collections should include only one data load file and one image pointer file.
5. All load-ready text must be produced as separate text files, not as fields within the .DAT file.
6. All load-ready collections should account for custodians in the custodian field.
7. Audio files should be separated from data files if both are included in the production.
8. The preferred method of submission is via File Transfer Protocol (FTP). (See details in Section IV on page 10.)
9. Large productions (any production above 10 GB) must be submitted to the CFTC on media such as a CD, DVD, thumb drive, or hard drive. The media must be clearly marked with the following:
    a. Matter name
    b. Producing party
    c. Production date
    d. Disk number (1 of X), if applicable
10. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**. Special characters are not permitted. Any data received with file names or folders with special characters, including the comma, will be rejected. The combined length of the file path with folder and file name should not exceed 255 characters.
11. Include information within the cover letter regarding the time zone used, if emails or other electronic files were standardized during conversion.
12. If you want the submitted material returned at the conclusion of the investigation you must indicate that preference in writing when the material is produced, **and** the media on which it is provided *must* be encrypted.

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 52 of 78



# CFTC Data Delivery Standards
*Effective: August 10, 2015*

13. All production data containing sensitive or personally identifiable information must be encrypted using FIPS 140 compliant software.
14. <u>Provide passwords for all password-protected files or hardware in a separate transmittal.</u>
15. All productions should be checked and produced free of computer viruses and malware. Productions containing viruses or malware may not be accepted and will require a new production.

## Electronic Discovery Protocols

If a producing party wants to employ winnowing techniques to reduce the volume of production material, then consultation with the CFTC attorney is required to define and agree upon the requirements and applied technology. Thereafter, all productions made to the CFTC should reference the established protocol. Such methodologies may include, but are not limited to, the following criteria:

- Data Sources
- Custodians
- Date Range(s)
- Search Terms
- Deduplication
- Email Threading Usage
- Early Case Assessment (ECA) Usage
- Technology Assisted Review (TAR)
- Other Criteria, including alternative forms of analytics

## Delivery Formats

### I. Native File Production

Requirements for the production of native document files are listed below.

1. **Emails**: Emails and attachments must be produced as PST, NSF, DBX, MBOX, or MSG files. The file name must include the name of the email custodian. When a production consists of multiple custodians, a separate PST (or similar file) should be produced for each custodian.
2. **Account Statements**: Account statements must be produced in the same format in which they were originally created and distributed.
3. **Instant Messages (IMs)**: IMs should be produced in .PST format or a delimited text file which must include, at a minimum, the following fields:
   1) DATE
   2) TIME
   3) FROM
   4) TO
   5) CONVERSATION_TEXT
   6) CONVERSATION_INDEX

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 53 of 78


Multiple conversations must be produced in a single file and a conversation index or similar unique string must be used to identify all threads of the same conversation. Field names must be included in the first row of the text file.

4. **Audio Files**: Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Types of audio files that will be accepted include:
   o Nice Systems audio files (.aud). AUD files offer efficient compression and would be preferred over both NMF and WAV files.
   o Nice Systems audio files (.nmf).
   o WAV files
   o MP3, MP4
   o WMA
   o AIF

Produced audio files must be in a separate folder compared to other data in the production.

Additionally, the call information (metadata) related to each audio recording **must be produced if it exists**. The metadata must include, at a minimum, the following fields:
   1) CALLER_NAME or CALLER_ID:      Caller's name or identification number
   2) CALLING_NUMBER:                Caller's phone number
   3) FILENAME:                      Filename of audio file
   4) DATE:                          Date of call
   5) TIME:                          Time of call
   6) CALLED_PARTY:                  Name of the party called
   7) CALLED_NUMBER:                 Called party's phone number

The filename is used to link the metadata to the produced audio file. The file name in the metadata and the file name used to identify the corresponding audio file must match exactly. The metadata file must be produced in delimited text format. Field names must be included in the first row of the text file. A sample .DAT file containing only a few fields for illustration purposes is depicted below:

```
TypeþþAudioTrimmedþþCALLER_IDþþCUSTODIANþþDATEþþTIMEþþCALLED_NUMBERþþ
þ07/09/2007 09:33:03þþSpeakersþþþþþþDoe, Janeþþ07/09/2007þþ09:32:42þþþþ
þ07/17/2007 09:17:36þþSpeakersþþþþþþDoe, Janeþþ07/17/2007þþ09:17:24þþþþ
þ10/12/2007 08:13:12þþSpeakersþþþþþþDoe, Janeþþ10/12/2007þþ08:12:47þþþþ
þ10/12/2007 08:18:51þþSpeakersþþþþþþDoe, Janeþþ10/12/2007þþ08:18:19þþþþ
þ12/05/2007 07:12:14þþSpeakersþþþþþþDoe, Janeþþ12/05/2007þþ07:11:58þþþþ
þ12/17/2007 08:40:17þþSpeakersþþþþþþDoe, Janeþþ12/17/2007þþ08:40:09þþþþ
þ12/31/2007 09:39:12þþSpeakersþþþþþþDoe, Janeþþ12/31/2007þþ09:39:00þþþþ
```

5. **Video Files**: Video files must be produced in a format that is playable using Microsoft Windows Media Player™ along with any available metadata. If it is known that the video files do not contain associated audio, indicate this in the accompanying transmittal letter. Types of video files accepted include:
   • MPG
   • AVI
   • WMV

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 54 of 78


- MOV
- FLV

6. **Transcripts**: Legal transcripts must be produced electronically in manuscript form with line numbers and page numbers. The preferred format is plain text (ASCII), although LiveNote and Summation formats are acceptable.

## II. Imaged Collections

While the CFTC accepts imaged productions in addition to native formats, imaged productions without native formats are not permitted unless the original document only exists in hard copy form. When images are produced, they must comply with the requirements below.

**\*\*\*The use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the CFTC.\*\*\***

Note: Adobe PDF files are **not** acceptable as imaged productions. PDF files are acceptable only when the document content was initially created as a PDF (e.g., fillable PDF forms) and not converted from another format.

### 1. Images

a. Black and white images must be 300 DPI Group IV single-page TIFF files.
b. Color images must be produced in JPEG format.
c. File names cannot contain embedded spaces or special characters (including the comma).
d. Folder names cannot contain embedded spaces or special characters (including the comma).
e. All image files must have a unique file name.
f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
g. The number of TIFF files per folder should not exceed 500 files.
h. TIFF images of Excel spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, should be used instead, and the native Excel file should be produced.

### 2. Concordance Image® Cross-Reference File

The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

The format is as follows:

*ImageKey,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 55 of 78


*ImageKey*:     This is the unique designation that Concordance and Concordance Image and Relativity use to identify and retrieve an image. This value may be the same as the Bates number endorsed on each image.

*VolumeLabel:*     Leave this field empty.

*ImageFilePath:*     This is the full path to the image file on the produced storage media.

*DocumentBreak:*     This field is used to delineate the beginning of a new document. If this field contains the letter "Y," then this is the first page of a document. If this field is blank, then this page is not the first page of a document.

*FolderBreak:*     This field is used to delineate the beginning of a new folder in the same manner as the *DocumentBreak* field. If this information is not available, then it may be left empty.

*BoxBreak:*     This field is used to delineate the beginning of a new box in the same manner as the *DocumentBreak* and *FolderBreak* fields. If this information is not available, then it may be left empty.

*PageCount:*     Leave this field empty.

Sample

```
LA-0000001,,E:\001\LA-0000001.TIF,Y,,,
LA-0000002,,E:\001\LA-0000002.TIF,,,,
LA-0000003,,E:\001\LA-0000003.TIF,Y,,,
LA-0000004,,E:\001\LA-0000004.TIF,,,,
LA-0000005,,E:\001\LA-0000005.TIF,,,,
```

## 3. Data File

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* or *Relativity®* database.

    a. The first line of the .DAT file must be a header record identifying the field names.

    b. The .DAT file must use the following *Concordance®* default delimiters:

       Comma           ASCII character 20
       Quote     þ     ASCII character 254
       Newline     ®     ASCII character 174

    c. Date fields should be provided in the format: MM/DD/YYYY.

    d. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

    e. A TEXTPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the Begno. Do not include the text in the .DAT file.

    f. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 56 of 78



g. BegAtt and EndAtt fields must be two separate fields.

h. DateSent and TimeSent fields must be two separate fields.

i. All text and metadata associated with the document collection must be produced.

Sample of .DAT file (only includes a sample of fields)

```
þBegnoþþBegAttachþþEndAttachþþFileDescripþþFilenameþþRecordTypeþ
þEML-0030437þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030438þþþþþþOutlook Data FileþþRE: Your Question.htmþþþ
þEML-0030439þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030440þþþþþþOutlook Data FileþþLook.htmþþE-MAILþþþ
þEML-0030441þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030442þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030443þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030444þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030445þþþþþþOutlook Data FileþþATTN.htmþþE-MAILþþþ
þEML-0030446þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030447þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
þEML-0030448þþþþþþOutlook Data FileþþQuestion Fill Out Form.htmþþþ
```

The metadata for the document collection should be provided in a .DAT file using the field definition and formatting described below:

| Field | Description | Field Type | Required |
|-------|-------------|------------|----------|
| Begno | Displays the document identifier of the first page in a document or the entire document of an E-Doc. | Text | Yes |
| Endno | Page ID of the last page in a document (for image collections only). | Text | Yes for Image Collections |
| BegAttach | Displays the document identifier of a parent record. Must be separate from EndAttach field. | Text | If it Exists |
| EndAttach | Displays the document identifier of the last attached .document in a family. Must be separate from BegAttach field. | Text | If it Exists |
| PgCount | Number of pages in a document (for image collections only). | Text | Yes for Image Collections |
| FileDescription | Description of a native file type. | Text | Yes |
| Filename | Original filename of a native file, | Text | Yes for Documents |
| RecordType | Displays the record type for each entry in the load file. | Text | Yes |
| ParentID | Displays the document identifier of the attachment record's parent (only for attachments). | Text | If it Exists |
| NumAttach | Total number of records attached to the | Text | If it Exists |

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 57 of 78


| Field | Description | Field Type | Required |
|---|---|---|---|
|  | document. The value will always be 0 (zero) for the actual attachment records. |  |  |
| Attachmt | Populates parent records with document identifier of each attached record and is separated by semi-colons. | Text | If it Exists |
| Custodian | The owner of the record. | Text | Yes |
| From | Author of the e-mail message. | Text | Yes for email |
| To | Main recipient(s) of the e-mail message. | Text | Yes for email |
| CC | Recipient(s) of "Carbon Copies of the e-mail message. | Text | If it Exists |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | Text | If it Exists |
| EMail_Subject | Subject of the e-mail message. | Paragraph | Yes for email |
| DateSent | Sent date of an e-mail message. Must be separate from TimeSent field. | MM/DD/YYYY | Yes for email |
| TimeSent | Time the e-mail message was sent. Must be separate from DateSent field. | Text | Yes for email |
| IntMsgID | Internet Message ID assigned to an e-mail message by the outgoing mail server. | Text | If it Exists |
| ConversationIndex | This is a 44 character string of numbers and letters that is created in the initial email and which as 10 characters added for each reply or forward of an email. | Text | Yes for email |
| Conversation Family | E-mail thread identification. Relational field for Conversion threads. | Text | Yes for email |
| EntryID | Unique identifier of e-mails in mail stores. | Text | If it Exists |
| Author | Author value pulled from metadata of the native file. | Text | If it Exists |
| Organization | Company extracted from metadata of the native file. | Text | If it Exists |
| Subject | Subject value extracted from metadata of the native file. | Paragraph | If it Exists |
| DateCreated | Creation date of the native file. | MM/DD/YYYY | If it Exists |
| DateLastMod | Date the native file was last modified. | MM/DD/YYYY | If it Exists |
| DateLastPrnt | Date the native file was last printed. | MM/DD/YYYY | If it Exists |
| MD5Hash | MD5 hash value. | Text | Yes |
| EDSource | Fully qualified original path to the source folder, files, and/or mail stores. | Text | Yes |
| NativeFile | Hyperlink to the native file. | Text | Yes |
| Textpath | Extracted text path. | Paragraph | Yes |
| Imagkey | Page ID of the first page of a document (for image collections only). Should be the same as the Begno field. | Paragraph | Yes |
| + Any other fields considered relevant by the producing party. | | | |

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 58 of 78



### 4. Text

Text must be produced as separate text files, not as fields within the .DAT file. If text is included in the .DAT file as a field, the production will be rejected. Extracted text must be in a separate text folder, one text file per document. The files must be named the same as the Begno field. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names).

### 5. Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the Begno field.
   b. The full path of the native file must be provided in the .DAT file for the NativeFile field.
   c. The number of native files per folder should not exceed 500 files.
   d. There should be no special characters (including commas in the folder names).

## III.   Productions of Adobe PDF Files

PDF files are not substitutions for native files, as metadata is lost when PDFing native files. PDF productions that are produced as native productions will be rejected unless the files were originally created using Adobe (e.g., fillable electronic PDF forms) or prior agreement is reached with the designated CFTC attorney. In those exceptions, PDF productions should adhere to the following guidelines:

1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document; **a PDF cannot contain multiple documents. PDF packages will be rejected.**
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

## IV.   Productions of Website Content

Website content must be produced in native format and viewable in common web browsers (e.g. Internet Explorer, Mozilla Firefox, and Google Chrome) without the use of any additional third party software. If the only existing state of a website is in source code form, the party must produce a fully compiled version of the website in addition to the website source code with documentation of the process used to render, compile, and/or restore the website to an easily viewable form.

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 59 of 78



# CFTC Data Delivery Standards
### *Effective: August 10, 2015*

## V. Productions of Forensic Images of Computer Media

Forensic images must be produced in a common/standard format to include (E01, Ex01, L01, Lx01, AD1, Raw Bitstream, and S01). An inventory of any original computer media must be provided with the image files. All associated log files from any forensic acquisition must be produced with the image files. The log files must contain a hash value, at a minimum (MD5, SHA-1, or higher), for authentication purposes. A chain of custody document must be provided to ensure the integrity of any digital evidence.

## VI. Productions of Forensically Acquired Mobile Device Data

Forensically acquired mobile device data must be provided in the original format of the software/hardware used to capture the data. All original logs and authentication reports must also be provided with the respective data.

## VII. FTP (File Transfer Protocol) Submission

The preferred method for producing data is via FTP. The CFTC has an FTP site set up that will allow transfer of data up to 2 GB per transmission.

Contact the CFTC attorney or paralegal for the particular matter in order to use FTP to deliver data. Once this method is agreed upon, you will receive two emails. One email will have instructions on using the FTP site; the other will contain a password for accessing the site.

Case 4:16-mc-09010-NKL   Document 2-1   Filed 05/23/16   Page 60 of 78

# Exhibit 3

To the Declaration of J. Alison Auxter
in Support of Application for an Order to
Show Cause and Order Requiring Compliance
with Administrative Subpoena

## Table of Contents

Report Section Summary                                    2
Subject                                                   2
Possible Addresses Associated with Subject                3
Alerts                                                    7
Work Affiliations                                        12
Phone Listings for Subject's Addresses                   17
Driver's Licenses                                        18
Professional & Recreational Licenses                     18
Voter Registrations                                      19
Licensed Drivers at Subject's Addresses                  19
Executive Affiliations                                   22
D&B Market Identifier Records                            26
Corporate Filings                                        27
Real Property & Deed Transfers                           38
Property Owners of Subject's Addresses                   42
Vehicles Registered to Subject                           51
Unclaimed Assets                                         71
Report section(s) with no matches                        72

## Report Section Summary

Subject (1)

Possible Addresses Associated with Subject (30)

Alerts (4)

Work Affiliations (22)

Phone Listings for Subject's Addresses (4)

Driver's Licenses (2)

Professional & Recreational Licenses (1)

Voter Registrations (1)

Licensed Drivers at Subject's Addresses (6)

Executive Affiliations (10)

D&B Market Identifier Records (1)

Corporate Filings (4)

Real Property & Deed Transfers (4)

Property Owners of Subject's Addresses (10)

Vehicles Registered to Subject (5)

Unclaimed Assets (2)

## Subject

**MCALLISTER, CHARLES**

**SSN:** REDACTED - issued in TX between REDACTED

**Gender:** MALE

**AKAs:**

1) MCALLISTER, CHARLES H (DOB: REDACTED

2) CASEY, CHARLES, CHARLES

3) MCALLISTER, CHARLES H (DOB: REDACTED

4) MCALLISTER, CHARLES H REDACTED ; DOB: REDACTED )

5) MCALLISTER, CHARLES H

6) CHARLES, MCALLISTER CHARLES

7) CHARLES, MCALLISTER CHA

8) MCALLISTER, CHARLES H (DOB: REDACTED

9) MCALLISTER, CHAR REDACTED ; DOB REDACTED

10) GRIMMITT, CHARLES

11) MCALLISTER, CHAR

12) MCALLISTER, CHARLES HADLEY (DOB: REDACTED

13) MC ALLISTER, CHARLES (REDACTED )

14) MC ALLISTER, CHARLES H (REDACTED

15) MCALLISTER, CHARLES HADLEY (REDACTED )

16) CHARLES, MCALLISTER CHARLES (REDACTED )

**DOB (Age):** REDACTED

**Drivers License?** REDACTED

**Marriage(s)?** REDACTED

**Divorce(s)?** REDACTED

Professional License(s)?     REDACTED          Recreational License(s)?     REDACTED

REDACTED

**Work Affiliation(s)?**          **YES**

1.) **Business**: BULLIONDIRECT, INC ; **Email**: info@bulliondirect.com

2.) **Business**: BULLIONDIRECT ; **Email**: mcallister@bulliondirect.com

3.) **Business**: BULLIONDIRECT ; **Title**: OWNER ; **Email**: mcallister@bulliondirect.com

4.) **Business**: BULLIONDIRECT INC ; **Title**: PRESIDENT ; **Email**: support@bulliondirect.com

5.) **Business**: BULLIONDIRECT INC ; **Title**: PRESIDENT ; **Email**: support@bulliondirect.com

6.) **Business**: BULLION DIRECT INC ; **Title**: OWNER ; **Email**: cmcallister@bulliondirect.com

7.) **Business**: BULLION DIRECT INC ; **Title**: OWNER ; **Email**: cmcallister@bulliondirect.com

8.) **Business**: BULLION DIRECT INC ; **Title**: OWNER ; **Email**: cmcallister@bulliondirect.com

9.) **Business**:          REDACTED

10.) **Business**: BULLION DIRECT INC ; **Title**: OWNER

11.) **Business**: BULLIONDIRECT, INC. ; **Title**: PRESIDENT

12.) **Business**:          REDACTED

13.) **Business**:

14.) **Business**:

15.) **Business**:

16.) **Business**:

17.) **Business**: BULLION DIRECT INC. ; **Title**: OWNER

18.) **Business**:     REDACTED

19.) **Business**: NUCLEOCORE, LLC

20.) **Business**:     REDACTED

21.) **Business**: BULLIONDIRECT, INC.

---

## Possible Addresses Associated with Subject

| Address | Source(s) | Reported Date(s) |
|---|---|---|
| 1)          REDACTED | Voters | Not Available |
|          REDACTED | Experian Gateway | 01/12/2010 - 05/06/2013 |
| AUSTIN, TX 78749 | | |
| TRAVIS COUNTY | | |
| Phone   REDACTED | | |
| Line Type: Cellular | | |

REDACTED

2)          REDACTED          Experian                    01/12/2010 - 05/06/2013
         REDACTED
         AUSTIN, TX 78749-1487
         TRAVIS COUNTY

3)                    REDACTED

4)

5)

6)

7)

# Exhibit 4

To the Declaration of J. Alison Auxter
in Support of Application for an Order to
Show Cause and Order Requiring Compliance
with Administrative Subpoena

| From: | randy randyleavitt.com <randy@randyleavitt.com> |
|---|---|
| Sent: | Thursday, February 04, 2016 4:55 PM |
| To: | Auxter, Alison |
| Cc: | dbotsford@aol.com |
| Subject: | In re: Certain Persons Engaged In Unlawful Retail Commodity Transactions |

Dear Ms. Auxter;

Per our discussion just now please accept this as our objections to the referenced subpoena. Without acknowledging the existence or possession of any specific records subject to this subpoena we object to the overbroad and unduly burdensome nature of the subpoena. We further object to producing any documents subject to the attorney client privilege. Additionally Mr. McAllister is not a "custodian of record" for BDI or Nucleo which your cover letter seems to suggest. Lastly, since we interpret the subpoena as an individual subpoena to Mr. McAllister himself, he hereby, through counsel, asserts his Fifth Amendment right against self-incrimination as to the act of production of any such document, as that term has been defined.

Your cover letter also references an 11 page document entitled *CFTC Data Delivery Standards* to be used if we are to produce any documents but no such document was enclosed with our subpoena. Please let us know if this email suffices to preserve our objections. As always , we are happy to discuss a resolution to these matters.

Sincerely,

~Randy Leavitt

Leavitt | Tibbe
1301 Rio Grande
Austin, TX

512 476-4475
Fax 512 542-3372

# Exhibit 5

To the Declaration of J. Alison Auxter
in Support of Application for an Order to
Show Cause and Order Requiring Compliance
with Administrative Subpoena

**From:** Auxter, Alison
**Sent:** Tuesday, March 22, 2016 3:25 PM
**To:** randy randyleavitt.com; dbotsford@aol.com
**Cc:** Mettenburg, Jo
**Subject:** Charles McAllister subpoena: status update requested

Randy and David,

I hope all is well. Randy, I believe you are still out of the country but wanted to include you on this email as well.

You'll recall that when we last spoke on 3/8, you both re-stated your belief that Mr. McAllister may be able to assert a 5th Amendment privilege against production of the documents requested by the CFTC's January 21, 2016 subpoena. Jo stated the CFTC's disagreement with the position, both as to a blanket objection and as to corporate documents being a subject of any such privilege, and requested that you follow up with us within a week of that 3/8 meeting to let us know the status of Mr. McAllister producing documents responsive to the subpoena. Please advise as to the status of your discussions; namely, please advise whether Mr. McAllister will be producing responsive documents and if so, when.

Regards,
Alison

**J. Alison Auxter | Trial Attorney**
U.S. Commodity Futures Trading Commission
Division of Enforcement
4900 Main Street, Suite 500
Kansas City, MO 64112
aauxter@cftc.gov
(816) 960-7700 (Telephone)
(816) 960-7751 (Fax)

| | |
|---|---|
| **From:** | randy randyleavitt.com <randy@randyleavitt.com> |
| **Sent:** | Tuesday, March 29, 2016 12:33 PM |
| **To:** | Auxter, Alison; dbotsford@aol.com |
| **Cc:** | Mettenburg, Jo |
| **Subject:** | RE: Charles McAllister subpoena: status update requested |

Alison and Jo,
I apologize for not getting back with you before I left the country. David and I talked to Joe Martinec and he informed us that he did not have any inventory or other means to let us know what he produced. In fact, he informed us that they sent CTFC all of BDI computers and so therefore I would think you have all the BDI corporate documents that are in existence. Without acknowledging the possession, existence or authenticity of any document Mr. McAllister might have in his possession, we have previously asserted Mr. McAllister's 5th amendment claim to the *act of producing* any such document. Jo has stated she does not believe he has a valid claim if the document is a corporate document. First of all , if you have the corporate documents then it seems like a waste of time to litigate this point.
Secondly, we do not believe the nature of the documents affects the claim regarding the act of production. If you all have authority stating otherwise we would be happy to take a look and reconsider his assertion of the 5th. It is not our desire to be difficult but we have to mindful of the pending criminal investigation.
 Regards,

*~Randy Leavitt*

**From:** Auxter, Alison [mailto:AAuxter@CFTC.gov]
**Sent:** Tuesday, March 22, 2016 3:25 PM
**To:** randy randyleavitt.com; dbotsford@aol.com
**Cc:** Mettenburg, Jo
**Subject:** Charles McAllister subpoena: status update requested

Randy and David,

I hope all is well. Randy, I believe you are still out of the country but wanted to include you on this email as well.

You'll recall that when we last spoke on 3/8, you both re-stated your belief that Mr. McAllister may be able to assert a 5th Amendment privilege against production of the documents requested by the CFTC's January 21, 2016 subpoena. Jo stated the CFTC's disagreement with the position, both as to a blanket objection and as to corporate documents being a subject of any such privilege, and requested that you follow up with us within a week of that 3/8 meeting to let us know the status of Mr. McAllister producing documents responsive to the subpoena. Please advise as to the status of your discussions; namely, please advise whether Mr. McAllister will be producing responsive documents and if so, when.

Regards,
Alison

**J. Alison Auxter | Trial Attorney**
U.S. Commodity Futures Trading Commission
Division of Enforcement
4900 Main Street, Suite 500
Kansas City, MO 64112
aauxter@cftc.gov
(816) 960-7700 (Telephone)

(816) 960-7751 (Fax)

# Exhibit 6

To the Declaration of J. Alison Auxter
in Support of Application for an Order to
Show Cause and Order Requiring Compliance
with Administrative Subpoena

**U.S. COMMODITY FUTURES TRADING COMMISSION**
4900 Main Street, Suite 500, Kansas City, Missouri 64112
Telephone: (816) 960-7700
Facsimile: (816) 960-7754
*www.cftc.gov*

J. Alison Auxter
Trial Attorney
(816) 960-7718
aauxter@cftc.gov

Division of
Enforcement

April 8, 2016

VIA ELECTRONIC MAIL to randy@randyleavitt.com

Mr. Randy Leavitt
1301 Rio Grande Street
Austin, TX 78701

     Re:    **Response to Commission Subpoena**

Dear Mr. Leavitt:

     Thank you for your March 29, 2016 response to my March 22, 2016 email inquiring about Mr. McAllister's intentions to respond to the January 21, 2016 Subpoena Duces Tecum of the Commodity Futures Trading Commission. As you are aware, the subpoena was served on you on January 21, 2016 and a response was due on February 4, 2016. We have had three conversations and several email exchanges regarding Mr. McAllister's response to this subpoena. As I have explained to you, the Commission believes it is entitled to any and all responsive documents in Mr. McAllister's custody, possession and control relating to Bullion Direct Inc. (BDI) and Nucleo Development Company, LLC (Nucleo). In our conversations and in email correspondence, you have indicated that Mr. McAllister is in possession of responsive documents, but that he will not produce them because: the Commission's subpoena is overbroad and unduly burdensome, Mr. McAllister's production would be duplicative of documents already produced to the Commission, and Mr. McAllister has a Fifth Amendment right against self-incrimination as to the act of production of any such documents. You have also stated that you have "bigger fish to fry" than to respond to the Commission's subpoena. As is explained below, these responses are inadequate.

     The Commission has issued a valid and enforceable administrative subpoena to Mr. McAllister. Mr. McAllister has the burden of establishing that a subpoena is overbroad and burdensome. *See U.S. Int'l Trade Comm. V. Gallo Winery*, 637 F. Supp. 1262, 1272 (D.D.C. 1985). The Commission's subpoena and the documents requested thereunder are relevant to a Commission investigation. *See U.S. v. Zadeh*, 2015 WL 418090, *5 (N.D. Tex. Jan. 31, 2015) ("so long as the material requested touches a matter under investigation, the subpoena will survive a challenge that it is not relevant"). Further "[a] subpoena is not unreasonably burdensome unless compliance threatens to unduly disrupt or seriously hinder normal operations

of a business." *Id*. at *5 (quoting *FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981). Given that Mr. McAllister ceded control of BDI just before it declared bankruptcy, his production of the requested documents will not disrupt or hinder the business of BDI.

As I have explained, the Commission has no way of knowing what documents are in Mr. McAllister's possession and is therefore unable to determine whether documents in Mr. McAllister's possession, custody or control are duplicative of documents already produced to the Commission. Due to Commission regulations that require Commission investigations to be private and confidential, I am unable to share with you what has been produced to the Commission by other parties. Finally, as I have explained, the fact that Mr. McAllister's documents might be duplicative of some documents in the Commission's possession does not discharge his duties under the subpoena.

You have also indicated that, in response to the Commission's subpoena, Mr. McAllister is asserting his Fifth Amendment right against self-incrimination as to the act of production of any documents responsive to the subpoena. This response is inadequate. First, Mr. McAllister has no Fifth Amendment privilege as to corporate documents of BDI or Nucleo. *See Braswell v. U.S.*, 487 U.S. 99 (1988); *see also U.S. v. Custodian of Records, Southwestern Fertility Ctr.*, 743 F. Supp. 783, 789 (W.D. Okla. 1990) (holding that business records have no Fifth Amendment protection and rejecting argument that act of production of business records is testimonial in nature and protected by Fifth Amendment); *Gloves, Inc. v. Berger*, 198 F.R.D. 6, 10 (D. Mass. 2000) (holding that former employee in possession of corporate records continues to hold the records in representative capacity even after termination of employment and enjoys no Fifth Amendment privilege as to corporate records). Second, a blanket assertion of the Fifth Amendment is an inappropriate response to the subpoena and it is Mr. McAllister's burden to establish the benefit of a Fifth Amendment privilege. That is, Mr. McAllister must elect to raise, or not raise, the defense with respect to each and every document responsive to the subpoena. *See SEC v. Caramadre*, 717 F.Supp.2d 217, 224 (D.R.I. 2010) (stating that a "'blanket'" invocation of the Fifth Amendment does not get Respondents off the hook"). Further, while Mr. McAllister has made no assertion that the documents requested in the subpoena are incriminating, "[t]he Fifth Amendment does not apply to all incriminating evidence, rather only compelled evidence from the accused which is testimonial in nature and incriminating." *Bayview Loan Servicing, LLC v. McNaughton*, 2007 WL 2433996, *1 (W.D. Mich. Aug. 22, 2007); *see also Fisher v. United States*, 425 U.S. 391, 408 (1976). If personal documents responsive to the subpoena do exist to which Mr. McAllister wishes to assert a Fifth Amendment privilege, please produce a detailed privilege log detailing the documents being withheld based on this privilege. *See, e.g., SEC v. Chicago Convention Center*, 2013 WL 4010585, *7 (N.D. Ill. Aug. 5, 2013) (stating that defendant "must produce a privilege log for those documents which he claims are covered by his Fifth Amendment privilege").

Nine weeks have now passed since documents were due to be produced pursuant to the Commission's subpoena. To date, there has been no meaningful progress in obtaining an

adequate response to the subpoena from Mr. McAllister.   Please comply with the subpoena by April 22, 2016.  Should Mr. McAllister refuse to provide the documents and information requested in the subpoena, the Commission will explore all options regarding this matter, including, but not limited to, seeking to obtain a federal court order enforcing the subpoena with an award of attorney's fees to the Commission for seeking this relief.  If you have any questions, please call me.

Sincerely,

J. Alison Auxter
Trial Attorney

cc:     David Botsford, dbotsford@aol.com
        Jo Mettenburg, jmettenburg@cftc.gov

# Exhibit 7

To the Declaration of J. Alison Auxter
in Support of Application for an Order to
Show Cause and Order Requiring Compliance
with Administrative Subpoena

# LEAVITT | TIBBE

——————— Attorneys at Law ———————

1301 Rio Grande Street • Austin, Texas 78701

Telephone: (512) 476-4475 • Facsimile: (512) 542-3372

**Randy T. Leavitt***
Randy@RandyLeavitt.com
www.RandyLeavitt.com
*Board Certified in Criminal Law
Texas Board of Legal Specialization

**Sherri K. Tibbe**
Sherri@SherriTibbe.com
www.SherriTibbe.com

April 28, 2016

J. Alison Auxter, Trial Attorney
U.S. Commodity Futures Trading Commission
Division of Enforcement
4900 Main Street, Suite 500
Kansas City, Missouri 64112

***Via E-mail to*** *AAuxter@CFTC.gov*

> Re:     *Certain Persons Engaged In Unlawful Retail Commodity Transactions* (subpoena)

Dear Alison:

We are in receipt of your correspondence dated April 8, 2016 regarding the Commission subpoena to Charles McAllister, dated January 21, 2016. I apologize for taking so long to respond, but David and I have been on different schedules and wanted to collaborate on our response.

First, I take issue with your assertion that we have not responded to the Commission subpoena. On February 4, 2016, I sent you a response via e-mail, after a brief telecom, wherein I advised that the email was our written response and objections to the subpoena, and if e-mail was not sufficient, please let me know. To date, we have no indication that our February 4th communication did not constitute a proper response to the subpoena. I understand that you may not agree with our objections or asserted privileges, but I do believe Mr. McAllister has properly and timely responded to the subpoena.

Secondly, I would like to address your assertions that we have communicated in e-mail correspondence and conversations that Mr. McAllister "is in possession of responsive documents". To the contrary, we have consistently stated, "[w]ithout acknowledging the existence or possession of any specific records subject to this subpoena" that we would discuss hypothetical situations with you to see if we could come to some compromise to accomplish both our concerns.

We have carefully reviewed your memorandum and the cases cited therein, and respectfully disagree with your analysis. Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), we believe Mr. McAllister has a viable 5th Amendment privilege to the "act of production" in regards to your January 21, 2016 subpoena. As stated numerous times, it is not our desire to be abstruse in this matter, but we have no intentions of waiving a constitutional privilege without the necessary protections the government could provide if so inclined.

In that regard, that is exactly the context that I made the off-handed remark that I "have bigger fish to fry" in one of our telephone conferences. It was in no way intended to convey any disrespect to your position or the Commission for that matter. We stand willing and ready to cooperate with your agency, the Department of Justice, or the local United States Attorney's office in reaching a resolution to this matter.

Once again, I apologize for missing your April 22, 2016 date, but I needed some additional time to adequately review your cases and prepare this response. As always, we welcome any additional input you wish to provide.

Sincerely,

/s/ *Randy Leavitt*

Randy T. Leavitt

RTL/em